United States District Court
Southern District of Texas
**ENTERED**
February 04, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADVON CORPORATION, | § | CIVIL ACTION NO. |
| Plaintiff, | § | 4:18-cv-02984 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| COOPWOOD'S AIR CONDITIONING INC, *et al,* | § | |
| | § | |
| | § | |
| Defendants, | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| RELEVANT SOLUTIONS LLC, *et al,* | § | |
| | § | |
| Third-Party Defendants. | § | |

MEMORANDUM AND ORDER
DISMISSING CERTAIN THIRD-PARTY CLAIMS

Plaintiff Advon Corporation hired Defendant and Third-Party Plaintiff Coopwood's Air Conditioning, Inc as a subcontractor on a construction project for The National Aeronautics and Space Administration. Advon claims that Coopwoods failed to perform in several ways, including by not providing and installing a functional temporary air compressor. See Dkt 42. Coopwoods had contracted with Third-Party Defendant Relevant Solutions LLC to supply that temporary compressor along with two other permanent compressors. And so Coopwoods filed a third-party complaint against Relevant

asserting a number of claims and seeking indemnity and contribution. See Dkt 35.

The motion by Relevant for judgment on the pleadings is granted in part and denied in part. Dkt 37. It is denied as to the claims for breach of implied warranty of merchantability, breach of express warranty, and indemnity and contribution under § 17.555 of the Texas Deceptive Trade Practices Act. Those claims will proceed. It is granted as to the claims for breach of contract, breach of implied warranty of fitness for a particular purpose, negligent misrepresentation, violations of the DTPA, and indemnity and contribution other than under § 17.555.

## 1. Background

This case arises out of a project to replace a compressed-air system for NASA at the Johnson Space Center. NASA awarded the contract to Advon in August 2017. Advon has since brought claims related to this project against a number of defendants, not all of whom are pertinent to the instant motion. For instance, Advon has sued Defendant Hartford Casualty Insurance Company with respect to a performance bond on this work. See Dkt 35 at ¶¶ 7–9.

As pertinent here, Advon engaged Coopwoods as a subcontractor in November 2017 to perform certain tasks, including replacement of the compressed-air system at Building 24. Coopwoods initially subcontracted with Relevant to provide two permanent centrifugal compressors for the project. Relevant delivered and Coopwoods paid for these compressors in June 2018. They are currently in use. See id at ¶ 11–13.

Coopwoods contracted with Relevant again in May 2018 to provide a temporary air compressor for Building 28. But Relevant no longer had a centrifugal compressor available. Relevant instead offered a rotary-screw unit that it said would meet all the specifications required by NASA. Relevant allegedly claimed that the rotary-screw unit was even better than the two permanent centrifugal units. And Relevant allegedly represented that it had "the knowledge, training, or experience necessary" to successfully install it. Id at ¶ 17. Advon approved a change order for the substitution. Relevant delivered the unit to the site later that month. See id at ¶ 14–17.

2

The temporary compressor failed to pass a requisite test run once installed. Advon blames the failure on the compressor itself, while Relevant says it was caused by NASA's insufficient power supply. Coopwoods doesn't appear to take a position as to whether the compressor was deficient as a factual matter. But it does assert that it offered several potential solutions to Advon, including an offer to supply a generator for additional power. Advon instead terminated Coopwoods from the project in August 2018. See id at ¶¶ 16–18.

Advon brought claims against Coopwoods for breach of contract, breach of express and implied warranties, DTPA violations, and negligent misrepresentation. Dkt 42. It claims that Coopwoods wasn't performing as required as early as January 2018 and provided faulty equipment, including the temporary compressor. Id at ¶ 8. Coopwoods answered, denied the allegations, and asserted affirmative defenses. Dkt 47.

Coopwoods also filed its initial third-party complaint against Relevant asserting claims for breach of contract, negligence, indemnity, and contribution, and seeking attorney fees. Dkt 10 at ¶¶ 10–14. Relevant answered. Dkt 18. It also filed a motion for judgment on the pleadings. Dkt 25. Coopwoods obtained leave to file an amended third-party complaint. Dkt 34. That is its current complaint, asserting claims for breach of contract, breach of express and implied warranties, negligent misrepresentation, DTPA violations, indemnity, and contribution, and seeking attorney fees and litigation costs. Dkt 35 at ¶¶ 21–28.

Relevant again answered. Dkt 36. And it again filed the subject motion for judgment on the pleadings. Dkt 37.

### 2. Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion seeking relief under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co v Morgan Stanley Dean Witter & Co*, 313 F3d 305, 312 (5th Cir 2002),

quoting *Hebert Abstract Co v Touchstone Properties Limited*, 914 F2d 74, 76 (5th Cir 1990).

A reviewing court evaluates a motion for judgment on the pleadings under Rule 12(c) using the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Gentilello v Rege*, 627 F3d 540, 543–44 (5th Cir 2010). Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted." Rule 8(a)(2) relatedly requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."

Read together, the Supreme Court has held that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive such motion, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 US at 570. A claim has *facial plausibility* "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id at 678, quoting Twombly, 550 US at 556.

Review on motion under Rule 12(c) is constrained in the same way as that under Rule 12(b)(6). The reviewing court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019) (citations omitted). The court must also generally limit itself to the contents of the pleadings and its attachments. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014) (citations omitted). But it may consider matters appropriate to judicial

notice. *Funk v Stryker Corp*, 631 F3d 777, 783 (5th Cir 2011) (citations omitted).

　　　3.　Analysis

　　The third-party complaint by Coopwoods sounds largely in contract. It tacks on other claims sounding in tort or under Texas statutes. Some survive, and some don't. Repleading will be permitted only as to certain claims.

　　　　a.　Breach of contract

　　Contracts relating to the sale of goods in Texas are governed by Article Two of the Uniform Commercial Code, as codified in Chapter Two of the Texas Business and Commerce Code. *Selectouch Corp v. Perfect Starch, Inc*, 111 SW3d 830, 834 (Tex App—Dallas 2003, no pet), citing Tex Bus & Com Code § 2.102. This is so even where the parties (as here) approach the claim as simply one for common-law breach of contract. *Equistar Chemicals LP v Indeck Power Equipment Co*, 2020 WL 4746469, *6 n 7 (SD Tex), citing *Tendeka, Inc v Nine Energy Service LLC*, 2019 WL 6872942, *5 (Tex App—Houston [14th Dist] 2019, no pet).

　　To succeed on its claim for breach of contract under the Texas UCC, Coopwoods must establish that:

- ○ *First,* a valid contract existed between it and Relevant;

- ○ *Second,* it tendered performance;

- ○ *Third,* Relevant breached the contract; and

- ○ *Fourth,* it suffered damages due to the breach.

*Equistar Chemicals LP*, 2020 WL 4746469 at *6 (citations omitted); see *Lewis v Bank of America NA*, 343 F3d 540, 544–45 (5th Cir 2003), citing *Palmer v Espey Huston & Associates, Inc*, 84 SW3d 345, 353 (Tex App—Corpus Christi 2002, pet denied). Where the Texas UCC applies, "it displaces all common law rules of law regarding breach of contract and substitutes instead those rules of law and procedure set forth in the U.C.C." *Glenn Thurman, Inc v Moore Construction, Inc*, 942 SW2d 768, 771 (Tex App—Tyler 1997, no writ).

　　But federal pleading standards still pertain. It is well-settled that federal courts sitting in diversity must apply state substantive law and federal procedural law. *Hanna v Plumer*, 380 US 460, 465

(1965), citing *Erie Railroad Co v Tompkins*, 304 US 64, 58 (1938). Allegations of a breach of contract will survive dismissal on the pleadings "if they are 'clearly based on contractual provisions.'" *Santander Consumer USA, Inc v Zeigler Chrysler Dodge Jeep-Downers Grove, LLC*, 2017 WL 2729998, *9 (ND Tex) (citations omitted) (decided under Rule 12(b)(6) standard); *Gentilello*, 627 F3d at 543–44 (same standard under Rule 12(c)). For example, in *Bedgood v Nissan North America, Inc*, the court held, "To sufficiently allege a breach of contract claim, a plaintiff must identify a specific provision of the contract which the defendant allegedly breached." 2016 WL 3566689, *5 (WD Tex), citing *Bayway Services Inc v Ameri-Build Construction LC*, 106 SW3d 156, 160 (Tex App—Houston [1st Dist] 2003, no pet). Likewise, in *Radenbaugh v State Farm Lloyds*, the court held, "No plausible cause of action for breach of contract can be stated unless there is an allegation as to the exact nature of the contract, including a statement as to defendant's obligations under the contract, how defendant failed to comply with its contractual obligations, and how that damaged plaintiff." 2016 WL 4442024, *4 (ND Tex).

This typically isn't a heavy lift, yet it requires more than nothing. Coopwoods asserts that it formed a contract with Relevant. Dkt 35 at ¶ 15. And it asserts that Relevant "materially breached its contract . . . by failing to provide a specification compliant and functioning temporary compressor for the NASA project." Id at ¶ 21. But Coopwoods doesn't attach the contract to any of its pleadings. And it neither specifies the "key terms" of the contract nor states "what and how they were breached." *Motten v Chase Home Finance*, 831 F Supp 2d 988, 1003 (SD Tex 2011). Coopwoods thus provides no means by which to ascertain Relevant's duties under the alleged contract, much less any breach of those duties. This pleading deficiency warrants dismissal.

The Texas UCC presents a more fundamental legal hurdle that prevents this claim from proceeding. In cases governed by the Texas UCC, Texas courts hold, "When a party fails to deliver as promised, a breach of contract occurs. Conversely, when a seller delivers non-conforming goods, it is a breach of warranty." *Chilton Insurance Co v Pate & Pate Enterprises Inc*, 930 SW2d 877,

890 (Tex App—San Antonio 1996, writ denied), citing *Southwestern Bell Telephone Co v FDP Corp*, 811 SW2d 572, 576 (Tex 1991). This means that "the critical factor" in distinguishing between whether the buyer has a breach of contract or breach of warranty claim under the Texas UCC is "whether the buyer has finally accepted the goods." *Emerson Electric Co v American Permanent Ware Co*, 201 SW3d 301, 310 (Tex App—Dallas 2006, no pet) (citations omitted).

Even assuming Coopwoods pleaded a valid contract with Relevant for the temporary compressor, it's undisputed that Relevant timely delivered the temporary compressor. Dkt 35 at ¶¶ 15, 21. Coopwoods nowhere pleads that it either rejected the temporary compressor upon delivery or revoked its acceptance once it didn't work. See ibid. Coopwoods alleges only that it tested the temporary compressor and that it failed to pass the test run. Dkt 35 at ¶ 16. This fails to plead a valid claim for breach of contract.

The claim for breach of contract will be dismissed. But Coopwoods isn't left without a remedy. Indeed, Relevant argues that the breach-of-contract claim properly relates not to a failure to perform, but instead to a receipt of nonconforming goods. Dkt 37 at 17. The latter is a warranty claim. Because Coopwoods accepted the temporary compressor and alleges that it didn't pass the test run, certain of its warranty claims under the Texas UCC will proceed, as explained below.

### b.   Breach of implied warranty

Coopwoods brings two claims for breach of implied warranty—one as to merchantability, the other as to fitness for a particular purpose.

*As to merchantability.* To succeed on its claim for breach of implied warranty of merchantability, Coopwoods must establish that:

- o   *First,* Relevant sold or leased goods to Coopwoods;

- o   *Second,* Coopwoods is a merchant with respect to goods of the kind at issue;

- o   *Third,* the goods were unmerchantable at the time of sale;

- o  *Fourth,* Coopwoods notified Relevant of the breach within a reasonable time;

- o  *Fifth,* Coopwoods suffered an injury; and

- o  *Sixth,* the breach proximately caused the injury to Coopwoods.

Tex Bus & Comm Code §§ 2.314, 2.607(c)(1); see *Hyundai Motor Co v Rodriguez*, 995 SW2d 661, 667–68 (Tex 1999); *Polaris Industries, Inc v McDonald*, 119 SW3d 331, 336 (Tex App—Tyler 2003, no pet); *Safeway Stores, Inc v Certainteed Corp*, 710 SW2d 544, 546–48 (Tex 1986).

Relevant argues that Coopwoods hasn't sufficiently pleaded the second, third, and fourth elements of this claim. Dkt 37 at 21.

*First,* Relevant argues that Coopwoods hasn't alleged that Relevant is a merchant "with respect to the compressed air equipment at issue in this lawsuit." Dkt 37 at 21. Section 2.104(a) of the Texas Business and Commerce Code defines a *merchant* as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." The Texas Supreme Court has "expansively construed" this definition "as 'intended to apply to all but the most casual or inexperienced sellers.'" *Ameristar Jet Charter, Inc v Signal Composites, Inc*, 271 F3d 624, 627 (5th Cir 2001), quoting *Nelson v Union Equity Co-Operative Exchange*, 548 SW2d 352, 357 (Tex 1977).

Coopwoods alleges, "Relevant held itself out as a qualified and reputable subcontractor/supplier with the requisite skills and expertise necessary to provide accurate information regarding the equipment it was supplying." Dkt 35 at ¶ 20. This sufficiently pleads that Relevant is a merchant of compressors.

*Second,* Relevant argues that Coopwoods hasn't alleged that the compressor was unmerchantable. Dkt 37 at 21. Section 2.314(b)(3) of the Texas Business and Commerce Code states that a product is *unmerchantable* if it isn't "fit for the ordinary purposes for which such goods are used." Section 2.314(b)(1)

also states that a product is *unmerchantable* if it cannot "pass without objection in the trade under the contract description." Texas courts hold that to "pass without objection" means that "a product must be of a quality comparable to other products that are sold in that line of trade under the contract description." *Polaris*, 119 SW3d at 336.

Coopwoods alleges that Relevant made "an express affirmation of fact or promise relating to the temporary compressors i.e. they were better than the Centrifugal Unit Proposed, would meet the specifications and drawings and/or the industry standard and were fit for their intended purpose." Dkt 35 at ¶ 25 (errors in original). It further claims that the temporary compressor didn't successfully pass the requisite test run. Id at ¶¶ 16, 25. And so Coopwoods alleges that the temporary compressor was "unfit for ordinary purposes for which those goods were obtained," and further, that it told Relevant that it "was suffering injury" from this deficiency. Id at ¶ 26; see also Dkt 51 at 43. Taken together, and given the broader factual context pleaded within the third-party complaint, this sufficiently pleads that the temporary compressor was unfit for its ordinary purpose.

*Third,* Relevant argues that Coopwoods didn't sufficiently allege that it notified Relevant of the breach. Dkt 37 at 21. Not so. Coopwoods squarely pleads that it "notified Relevant of the breach." Dkt 35 at ¶ 26. It also alleges that it attempted "to remedy the situation with Advon and Relevant." Id at ¶ 18. This sufficiently pleads notice to Relevant of the breach.

The claim for breach of the implied warranty of merchantability will proceed.

*As to fitness for a particular purpose.* To succeed on its claim for breach of implied warranty of fitness for a particular purpose, Coopwoods must establish that:

- o  *First,* Relevant sold or leased goods to Coopwoods;

- o  *Second,* Relevant had knowledge at the time of contracting that Coopwoods was buying or leasing the goods for a particular purpose and relying on Relevant's skill or judgment to select goods for that purpose;

- o   *Third,* Coopwoods actually relied on Relevant's skill or judgment;
- o   *Fourth,* Relevant delivered goods that were unfit for Coopwoods' particular purpose;
- o   *Fifth,* Coopwoods notified Relevant of the breach;
- o   *Sixth,* Coopwoods suffered injury; and
- o   *Seventh,* the breach proximately caused the injury suffered by Coopwoods.

Tex Bus & Comm Code § 2.315; see *Berge Helene Ltd v GE Oil & Gas Inc*, 896 F Supp 2d 582, 599 (SD Tex 2012); *Omni USA, Inc v Parker-Hannifin Corp*, 964 F Supp 2d 805, 815 (SD Tex 2013).

Relevant argues that Coopwoods hasn't sufficiently pleaded the second element. It specifically argues that Coopwoods hasn't alleged that Relevant knew it "was relying on Relevant's skill or judgment to select the temporary compressor," or that "the purpose for which [it] rented the temporary compressor was a 'non-ordinary purpose.'" Dkt 37 at 22.

Coopwoods does sufficiently plead that Relevant knew or should have known that Coopwoods was relying on Relevant's skill or judgment to furnish a suitable temporary compressor. Coopwoods alleges that Relevant "made representations and warranties that the equipment would comply with NASA's specifications and drawings." Dkt 35 at ¶ 15. And it alleges that Relevant "represented that the Rotary Screw Unit would function and, in fact, function better than the Centrifugal Unit." Ibid.

But Coopwoods hasn't sufficiently pleaded that the temporary compressor was to be used for a particular purpose. Texas law makes clear that "a particular purpose 'envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability.'" *Strauss v Fort Motor Co*, 439 F Supp 2d 680, 686 (ND Tex 2006), citing Tex Bus & Comm Code § 2.315, Comment 2. Coopwoods alleges that Relevant "provided goods to Coopwood's and the goods are alleged to be unfit for *ordinary* purposes for which those goods were obtained." Dkt 35 at ¶ 26 (emphasis added). But an ordinary

10

purpose inherently isn't particular and is instead comprehended within the concept of merchantability.

The claim for breach of implied warranty of fitness for a particular purpose will be dismissed.

### c.   Breach of express warranty

Relevant makes a global request at the conclusion of its motion that the Court "dismiss with prejudice all claims asserted by Coopwoods against Relevant." Dkt 37 at 26. But it nowhere argues or provides any reasons to support dismissal of the claim for breach of express warranty. To the contrary, Relevant sought dismissal of the breach-of-contract claim upon argument that the claim was properly brought under breach of warranty. See Dkt 37 at 17.

The claim for breach of express warranty will proceed.

### d.   Negligent misrepresentation

Coopwoods brings a claim for negligent misrepresentation, alleging generally that it relied on and was injured because of material and negligent misrepresentations by Relevant regarding the temporary compressor. Dkt 35 at ¶ 22. Relevant doesn't argue that Coopwoods fails to plead facts supporting each element of such claim. See *Federal Land Bank v Sloane*, 825 SW2d 439, 442 (Tex 1991) (listing elements). It instead argues that the claim "'depends entirely on pleading and proving' the contract between the parties, and therefore, the claim fails under the economic loss doctrine." Dkt 37 at 13, quoting *Oxy USA, Inc v Cook*, 127 SW3d 16, 20 (Tex App—Tyler 2003, pet denied).

Relevant responds that this can't be addressed "until the trial on the merits in front of the jury," making it premature to consider whether the subject misrepresentations are subsumed in a contract or whether it suffered "an economic loss related to the subject matter of the contract." Dkt 51 at 22. To the contrary, federal courts in Texas have evaluated defenses based upon the economic-loss doctrine on motions for judgment on the pleadings. For example, see *Kiper v BAC Home Loans Servicing, LP*, 884 F Supp 2d 561, 570–71 (SD Tex 2012); *ROCA Resource Co v Devon Energy Production Co,* 2015 WL 4479118, *1, 3 (WD Tex). Indeed, the doctrine is susceptible to consideration even on

11

motion to dismiss. For example, see *In re Heartland Payment Systems, Customer Data Security Breach Litigation*, 834 F Supp 2d 566, 583–590 (SD Tex 2011); *Johnson v Wells Fargo Bank, NA*, 999 F Supp 2d 919, 930–31 (ND Tex 2014).

Coopwoods also argues on the merits that the economic-loss doctrine doesn't bar its negligent-misrepresentation claim. Dkt 37 at 20. Whether it does largely depends upon the damages that Coopwoods seeks under this claim.

Texas courts primarily apply the economic-loss doctrine in two situations. *First,* it's been applied to "preclude tort claims brought to recover economic losses when those losses are the subject matter of a contract." *Pugh v General Terrazzo Supplies, Inc*, 243 SW3d 84, 90 (Tex App—Houston [1st Dist] 2007, pet denied). *Second,* it's been applied to "preclude tort claims brought to recover economic losses against the manufacturer or seller of a defective product where the defect damages only the product and does not cause 'personal injury' or damage to 'other property.'" Id at 91 (citations omitted). Texas courts hold in both situations that a plaintiff's "economic losses [are] more appropriately addressed through statutory warranty actions or common law breach of contract suits than tort claims." *Sharyland Water Supply Corp v City of Alton*, 354 SW3d 407, 418 (Tex 2011).

Only the former, contract-based application potentially pertains. "Simply stated, under the economic loss rule, a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim." *Sterling Chemicals, Inc v Texaco Inc*, 259 SW3d 793, 796 (Tex App—Houston [1st Dist] 2007, pet denied) (citations omitted). And so, "if a plaintiff only seeks to recover for the loss or damage to the subject matter of a contract, he cannot maintain a tort action against a defendant." Ibid, citing *Southwestern Bell Telephone Co v DeLanney*, 809 SW2d 493, 494 (Tex 1991).

To be clear, the economic-loss doctrine can also serve to bar causes of action that in essence derive from breach-of-warranty claims. Breach of warranty and breach of contract do proceed as "distinct causes of action with separate remedies." *Medical City Dallas, Ltd v Carlisle Corp*, 251 SW3d 55, 60 (Tex 2008) (citations omitted). But with respect to the economic-loss doctrine, an

express warranty "is nonetheless a part of the basis of a bargain and is contractual in nature." Ibid (citations omitted). "Recognizing that breach of an express warranty is founded on contract thus comports with a party's expectations under the economic loss rule." Id at 61 (citation omitted). Consideration of the doctrine with respect to the breach of an implied warranty is a bit more nuanced. This is so because such a claim can sound in either contract or tort, "depending on the circumstances." *JCW Electronics, Inc v Garza*, 257 SW3d 701, 704 (Tex 2008). At base, when the damages are "purely economic, the claim sounds in contract." Id at 705 (citations omitted).

The appellate court in *Sterling Chemicals* considered the economic-loss doctrine in the context of a negligent-misrepresentation claim. It held that if parties are in contractual privity, "a plaintiff may not bring a claim for negligent misrepresentation unless the plaintiff can establish that he suffered an injury that is *distinct*, *separate*, and *independent* from the economic losses recoverable under a breach of contract claim." 259 SW3d at 797 (emphasis added), citing *DSA Inc v Hillsboro Independent School District*, 973 SW2d 662, 664 (Tex 1998). Coopwoods thus can't bring a negligent-misrepresentation claim to recover the same damages it could otherwise recover under claims for breach of contract or breach of express and implied warranty. And the burden is on the plaintiff to prove that its injury is independent of the economic losses it could recover under those claims. See *Sterling Chemicals*, 259 SW3d at 797.

Coopwoods alleges in its amended third-party complaint that the negligent misrepresentations by Relevant caused it to suffer "actual damages, consequential damages, attorney's fees, litigation expenses," along with other costs and interest. Dkt 35 at ¶ 22. These damages replicate the damages that Coopwoods seeks under its breach-of-warranty claims. See id at ¶¶ 25–26. It also argues in its response brief that the negligent misrepresentations caused it to suffer "reputational damages in the construction industry not to mention with the federal government and its surety." Dkt 51 at 21.

*As to actual and consequential damages.* Actions for breach of express warranty permit recovery of actual damages. See *Medical*

*City Dallas*, 251 SW3d at 62, citing *PPG Industries, Inc v JMB/Houston Centers Partners LP*, 146 SW3d 79, 92 (Tex 2004). So do actions for breach of the implied warranty of merchantability. *Polaris Industries*, 119 SW3d at 336 (citations omitted). "Actual damages include direct damages, which are measured by the difference between the value of the goods accepted and the value of the goods if they had been as warranted." Ibid. "Actual damages also include incidental and consequential damages, such as foreseeable lost profits, personal injury, and property damage caused by the breach." Id at 336–37 (citations omitted).

As such, neither actual nor consequential damages are sufficiently distinct, separate, and independent to support the negligent-misrepresentation claim. The economic-loss doctrine bars their recovery.

*As to attorney fees and litigation costs.* Parties can't recover attorney fees from an opposing party under Texas law "unless they are permitted by statute or by contract between the parties." *Holland v Wal-Mart Stores*, 1 SW3d 91, 95 (Tex 1999). No statute allows the award of attorney fees for negligent misrepresentation. *Nwankpa v Obilom*, 2017 WL 3902605, *4 (Tex App—Austin, no pet). This makes consideration with respect to the economic-loss doctrine somewhat beside the point. But even if considered, the Texas Supreme Court holds that attorney fees are available for a breach-of-express-warranty claim under § 38.001(8) of the Texas Civil Practice and Remedies Code. *1/2 Price Checks Cashed v United Automobile Insurance Co*, 344 SW3d 378, 388 (Tex 2011), citing *Medical City Dallas*, 251 SW3d at 58, 61. This provision also allows prevailing parties to recover costs.

As such, neither attorney fees nor litigation costs are sufficiently distinct, separate, and independent to support the negligent-misrepresentation claim. The economic-loss doctrine thus bars them.

*As to reputational damages.* Coopwoods didn't plead reputational damages under its negligent misrepresentation claim, instead asserting that idea for the first time in its response. Compare Dkt 35 at ¶ 22, with Dkt 51 at 21. But it did allege this category of damages with respect to its breach-of-contract claim. Dkt 35 at ¶ 21. Were the issue reached, this would likely be

sufficient admission that the economic-loss doctrine bars such damages in this context.

But dispositive here is a rule of procedure. "When a plaintiff raises an issue for the first time in response to a dispositive motion, it should be treated as a motion to amend the complaint." *Del Valle v PLIVA, Inc*, 2011 WL 7168620, *7 (SD Tex), citing *Stover v Hattiesburg Public School District*, 549 F3d 985, 989, n 2 (5th Cir 2008). That implied motion is denied. Coopwoods has pleaded negligence-based claims twice. Dkt 10 at ¶ 12; Dkt 35 at ¶ 22. And twice those claims have been met with the same argument for dismissal under the economic-loss doctrine. Dkt 25 at 10–14; Dkt 37 at 11–15. A third-amended complaint as to claims sounding in negligence isn't warranted.

The economic-loss doctrine bars the claim for negligent misrepresentation. It will be dismissed.

e.   Texas Deceptive Trade Practices Act

To prevail on a claim for violation of the Texas Deceptive Trade Practices Act, consumers must "establish that each defendant violated a specific provision of the Act, and that the violation was a producing cause of the claimant's injury." *Amstadt v United States Brass Corp*, 919 SW2d 644, 652 (Tex 1996) (citations omitted).

Coopwoods asserts a DTPA claim against Relevant without specifying any particular provision. Dkt 35 at ¶¶ 23–24. It instead provides a bulleted list of potential violations, while making no attempt to connect them to any factual allegations against Relevant. See id at ¶ 23. "Conclusory allegations that do no more than repeat the elements of the claim are insufficient under Rule 8 of the Federal Rules of Civil Procedure." *Reece v Chubb Lloyds Insurance Co of Texas*, 2011 WL 841430, *2 (SD Tex).

The claim for violations of the DTPA will be dismissed.

f.   Indemnity and contribution

Advon asserts claims against Coopwoods for DTPA violations and negligent misrepresentation. Dkt 42 at ¶¶ 17–20. And so Coopwoods purports to seek indemnity and contribution from Relevant if Coopwoods "is found liable to Advon as a result of a non-functioning temporary compressor delivered by

15

Relevant to the NASA Project." Dkt 35 at ¶ 27. Coopwoods broadly identifies three potential sources for such recovery—via § 17.555 of the DTPA; via "common law indemnity as between a principal and agent and/or under the doctrine of comparative causation"; and via "any other applicable statutory law or common law regarding indemnity and contribution." Ibid.

*As to the DTPA.* Section 17.555 of the DTPA provides, "A person against whom an action has been brought under this subchapter may seek contribution or indemnity from one who, under the statute law or at common law, may have liability for the damaging event of which the consumer complains." Advon has raised a claim against Coopwoods for violating the DTPA. Dkt 42 at ¶¶ 17–19. It remains to be seen whether Coopwoods will be held liable to Advon under the DTPA and whether Relevant will be found liable to Coopwoods for the same damaging event. But Coopwoods has at this juncture sufficiently pleaded a claim for indemnity and contribution under § 17.555.

*As to common law indemnity, comparative causation, and nonspecific catchall-style pleading.* Coopwoods pleads nothing factually as to "common law indemnity as between a principal and agent and/or under the doctrine of comparative causation." Dkt 35 at ¶ 27. And it gets the requisite pleading burdens exactly wrong when purporting to raise a claim for indemnity and contribution according to "any other applicable statutory law or common law." Dkt 35 at ¶ 27. It isn't up to defendants to guess what the claim against them might be. And federal courts certainly aren't obligated to search state statutes or comb through the common law to identify grounds by which plaintiffs might obtain relief. That burden is on plaintiffs alone. As such, these "vague and conclusory statements" of catchall liability aren't sufficient to survive a motion for judgment on the pleadings. *Yosowitz v Covidien LP*, 182 F Supp 3d 683, 695 (SD Tex 2016) (citation omitted) (decided under Rule 12(b)(6) standard)); *Gentilello*, 627 F3d at 543–44 (same standard under Rule 12(c)).

The claim for indemnity and contribution under § 17.555 of the DTPA will proceed. All other aspects in this regard will be dismissed.

16

g.    Potential for repleading

A district court "should freely give leave [to amend] when justice so requires." FRCP 15(a)(2). The Fifth Circuit has long held that this evinces a bias in favor of granting leave to amend. See *Dussouy v Gulf Coast Investment Corp*, 660 F2d 594, 597(5th Cir 1981); *Carroll v Fort James Corp*, 470 F3d 1171, 1175 (5th Cir 2006). But whether to grant leave to amend is within the sound discretion of the district court. *Pervasive Software Inc v Lexware GmbH & Co KG*, 688 F3d 214, 232 (5th Cir 2012) (citation omitted). It may be denied "when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v Chapman*, 969 F3d 38, 248 (5th Cir 2020), citing *Smith v EMC Corp*, 393 F3d 590, 595 (5th Cir 2004).

The pleading of claims for breach of implied warranty of fitness for a particular purpose and for violations of the DTPA are extremely thin. But they haven't been subject to prior challenge by Relevant or amendment by Coopwoods, and it isn't clear that repleading would be entirely futile. These claims will be dismissed without prejudice. Any further attempt to plead them will be subject to consideration under Rule 11.

As noted above, Relevant moved for judgment on the pleadings against the initial third-party complaint filed by Coopwoods, raising the very same pleading deficiency as to the breach-of-contract claim in its previous motion. See Dkt 25 at 14–15. Coopwoods then obtained leave to file its amended third-party complaint. See Dkts 34, 35. It in no way addressed the deficiency on amendment and will not be allowed another attempt. The analysis above also shows that any such attempt would be futile. The breach-of-contract claim will be dismissed with prejudice.

Coopwoods also alleged in its first complaint that its damages "were proximately caused by the negligence" of Relevant. Dkt 10 at ¶ 13. On repleading, Coopwoods specified its negligence claim as one of negligent misrepresentation. But Relevant invoked the economic-loss doctrine against any claim sounding in negligence in its prior motion for judgment on the pleadings. Dkt 25 at 9–14. Coopwoods fails to overcome that bar

in its amended complaint. It will not be permitted another attempt, which would likely be futile in any event. The claim for negligent misrepresentation will be dismissed with prejudice.

Relevant moved for judgment against the initial attempt by Coopwoods to plead its claim for indemnity and contribution. Dkt 25 at 16–20. Coopwoods then repleaded this claim, voluntarily withdrawing several aspects and asserting others. Dkt 30 at 26, 30. Those other aspects still haven't been sufficiently pleaded apart from § 17.555 of the DTPA. Dkt 35 at ¶ 27. Only that latter aspect will proceed. All others will be dismissed with prejudice.

4. Conclusion

The motion by Third-Party Defendant Relevant Solutions LLC for judgment on the pleadings is GRANTED IN PART and DENIED IN PART. Dkt 37.

The claims by Third-Party Plaintiff Coopwood's Air Conditioning, Inc for breach of implied warranty of merchantability, breach of express warranty, and indemnity and contribution under § 17.555 of the DTPA will proceed.

Its claims for breach of contract, negligent misrepresentation, and all other aspects of indemnity and contribution are DISMISSED WITH PREJUDICE.

Its claims for breach of implied warranty of fitness for a particular purpose and violations of the Texas Deceptive Trade Practices Act are DISMISSED WITHOUT PREJUDICE. Coopwoods may bring a motion seeking leave to amend by February 15, 2021, if at all.

SO ORDERED.


Signed on February 4, 2021, at Houston, Texas.


Hon. Charles Eskridge
United States District Judge

18